Filed 9/21/21  P. v. Karjala CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE, | C090487 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F099) |
| v. | |
| SEAN ERIN KARJALA, | |
| Defendant and Appellant. | |

After a traffic stop, defendant Sean Erin Karjala chased a law enforcement officer with a hatchet before being shot several times.  Defendant was found guilty of attempted murder of a peace officer, among other charges, and the trial court sentenced him to an indeterminate term of 30 years to life and a determinate term of six years, in addition to imposing various fines and fees.

On appeal, defendant argues:  (1) the attempted murder conviction must be reversed because the trial court's finding that defendant had the intent to kill the officer rests on insufficient evidence, (2) the matter must be remanded for a hearing on

1

defendant's ability to pay the fines and fees ordered by the court under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), and (3) the abstract of judgment incorrectly reflects the sentence imposed. We agree only with defendant's third contention and shall order that errors on the abstract of judgment be corrected.

BACKGROUND

Defendant was charged with attempted murder of a peace officer (Pen. Code, § 217.1, subd. (b)),[1] resisting an executive officer (§ 69), and assault with a deadly weapon upon a peace officer (§ 245, subd. (c)), with the enhancement as to the first two counts that he used a deadly and dangerous weapon during their commission (§ 12022, subd. (b)(1)). It also was alleged that he had suffered a prior serious felony conviction (§ 667, subds. (a)(1), (b)-(i)).

At a court trial, Tehama County Sheriff's Captain David Kain testified regarding a prior arrest of defendant on April 4, 2013. Defendant was driving a van and, when Captain Kain turned on his siren, defendant drove evasively, eventually skidding to a stop and fleeing on foot. Captain Kain grabbed defendant's shirt as he was climbing a fence, at which point defendant tried to struggle free and hit Captain Kain's arm "in an effort to get [Captain Kain] to break [his] grip." After being pulled back over the fence, it took several officers to handcuff defendant as he struggled to get free.

Officer Chad Barnes testified to executing a traffic stop of defendant at dusk on April 27, 2013, for speeding. Defendant initially drove through a mobile home park "exceeding a safe speed" before he pulled into a motel parking lot. Officer Barnes approached defendant and asked, among other things, whether he had any weapons in the car; defendant said, "No." After smelling alcohol and cannabis, Officer Barnes decided

---

[1] Undesignated statutory references are to the Penal Code.

to conduct an investigation for driving under the influence and asked defendant to step out of his car.

Officer Barnes said defendant started to open his door but then stopped and stared straight ahead. Officer Barnes gave another command and defendant reached behind the passenger seat and grabbed a hatchet. Defendant then quickly got out of the car and started running towards Officer Barnes, who was on the other side of the car, with the hatchet raised above him. Officer Barnes testified he was "[i]n fear for [his] life."

Officer Barnes backed away from defendant, who continued to approach with the hatchet raised while "yelling and screaming." Officer Barnes fired nine shots, some hitting defendant, who fell to the ground and dropped the hatchet several feet away. Defendant had gotten approximately 10 to 15 feet from Officer Barnes, but he never swung the hatchet. Officer Barnes said that while he radioed for backup after shooting defendant, defendant got up and ran at him; Officer Barnes was able to kick defendant in the chest and defendant fell again. Officer Barnes testified that defendant then said, "Why didn't you kill me, mother fucker?"

The dashcam video from Officer Barnes's patrol car was entered into evidence. The video shows Officer Barnes speaking to defendant from the passenger side of the car for a couple of minutes. Officer Barnes then backs away from the car and defendant is seen running around the back of the car holding the hatchet and then turns left towards Officer Barnes on the passenger side. Officer Barnes moves around the front of the car and then backs away rapidly from the car while defendant is chasing him around the vehicle. The camera records Officer Barnes firing the first few shots as defendant is coming around the front of the car, and then Officer Barnes and defendant move out of the frame while defendant is yelling and holding the hatchet. Off camera Officer Barnes is heard telling defendant to stay down multiple times and defendant yelling in response, "No." Defendant can also be heard asking why Officer Barnes did not kill him.

Kenna Sylva, who was at the motel that day, testified she saw defendant pull what looked like a hatchet out of his car and then "charged after" Officer Barnes. She described defendant as "crouched down . . . like he was trying to sneak up on" or "ambush" Officer Barnes in order to "kill him." Sylva also saw Officer Barnes backing away but defendant "kept going towards him, faster." She grabbed her children and ran inside before seeing the shots fired because she "was very scared that [defendant] was going to kill the officer, look up, see [them] there as witnesses, and come up and kill [them] as well." After a few minutes she looked out again and saw Officer Barnes trying to help defendant, who was yelling, "Why didn't you just kill me?"

Defendant testified in his defense that he had been depressed and suicidal after he had been arrested earlier in the month. He was "overwhelmed by fear," "hopelessness and just paranoia that the police would be coming for [him] at any minute." He also had written suicide notes.

Defendant conceded his initial instinct was to flee from Officer Barnes, but then "knew there was no fleeing," so he "decided to slow down and deal with whatever came." When Officer Barnes asked him to get out of the car, he thought he was going to be taken into custody. He got the hatchet and chased Officer Barnes because he wanted Officer Barnes to take his life. Defendant said he raised the hatchet over his head because he knew Officer Barnes "wasn't going to shoot [him] unless he was afraid." Defendant denied ever intending to harm or kill Officer Barnes, defendant just wanted to die. When he got back up after being shot, defendant said he yelled, "[F]inish me," and, "[K]ill me." He admitted he took the hatchet out of its sheath before chasing Officer Barnes. He stated that he had a good paying job and had recently purchased a laptop and cell phones, which were found in the car.

The court found defendant guilty on all counts and found all allegations true. In discussing the evidence for defendant's intent to kill Officer Barnes, the trial court found "defendant was not fully forthcoming" when he testified, and found "him to not be

4

credible on the key issues in this case," specifically, he was "the only one who said he intended to kill himself." Thus, the trial court found beyond a reasonable doubt defendant "intended to kill this police officer and render him incapable of arresting him . . . , which is consistent with his history with law enforcement."

On July 26, 2019, the trial court sentenced defendant to an indeterminate term of 15 years to life for attempted murder of a peace officer, doubled to 30 years for a prior strike, and determinate terms of one year for the deadly weapon enhancement and five years for the prior serious felony. The court also imposed a $10,000 restitution fine (§ 1202.4, subd. (b)), a $10,000 stayed parole revocation restitution fine (§ 1202.45), three $30 criminal conviction assessments (Gov. Code, § 70373), and three $40 court operations assessments (§ 1465.8).

DISCUSSION

I

*Substantial Evidence*

Defendant first argues that his conviction for attempted murder of a peace officer lacks substantial evidence because there was no evidence defendant had the specific intent to kill Officer Barnes. Defendant contends the only theory supported by the evidence is that he wanted to provoke Officer Barnes into shooting and killing him, known as "suicide by cop." We disagree.

In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) We also may not reweigh the evidence and are bound by the trial court's credibility determinations.

5

(*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' [Citation.]" (*Cravens, supra*, at p. 508.) The standard is the same in cases in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522, 625.)

Section 217.1, subdivision (b) criminalizes the attempted murder of certain public officials, including peace officers. "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. [Citations.]" (*People v. Lee* (2003) 31 Cal.4th 613, 623.) The evidence must show express malice, i.e., a deliberate intention to kill a human being unlawfully. (§ 188; *People v. Bland* (2002) 28 Cal.4th 313, 327-328.) " 'There is rarely direct evidence of a defendant's intent. Such intent usually must be derived from all the circumstances of the attempt, including the defendant's actions.' [Citation.]" (*People v. Smith* (2005) 37 Cal.4th 733, 741.) This includes motive evidence, which "is often probative of intent to kill." (*Ibid.*) It is "impossible to be certain that a person will not lose his resolve to commit the crime until he completes the last act . . . . But the law of attempts would be largely without function if it could not be invoked until the trigger was pulled, the blow struck, or the money seized." (*People v. Dillon* (1983) 34 Cal.3d 441, 455.)

There is substantial evidence that defendant intended to kill Officer Barnes. Defendant removed the protective sheath from the hatchet, a dangerous weapon, crouched as to conceal his attack, and then charged Officer Barnes while raising the hatchet and yelling. As Officer Barnes tried to back away, defendant sped up, chased Officer Barnes around the car, and did not stop until he was shot several times. Officer Barnes said he feared for his life and the only other percipient witness had the impression defendant was trying to ambush and kill Officer Barnes. The witness was so convinced of this she hid with her children so that defendant would not try to then kill them.

6

There also is supporting motive evidence. Just a few weeks prior, defendant hit Captain Kain while attempting to evade capture by scaling a fence. Though defendant significantly intensified his efforts to escape from Officer Barnes later that month, his prior efforts to resist arrest indicate a similar motive here. And, as the trial court found, the only unequivocal evidence supporting defendant's motive theory of "suicide by cop" was defendant's own testimony, which the trial court did not find reliable. Defendant's interrogative statement to Officer Barnes asking why he did not kill him is at best ambiguous. This statement could be interpreted as him being in so much pain from being shot multiple times that he wished Officer Barnes would have just killed him. Regardless, even if defendant's contention is accepted, this does not mean he did not also intend to kill Officer Barnes. Defendant could have thought either he had to kill Officer Barnes to get out of being arrested or he would die trying, as he was "overwhelmed by fear" of being arrested again.

Finally, that defendant did not strike Officer Barnes, and may not even have swung at him, does not change the conviction's validity. An attempt crime is by definition an incomplete crime. Defendant did have to still swing the hatchet and hit Officer Barnes with a blow significant enough to kill him. But defendant was not given the opportunity to do so because of Officer Barnes's quick retreat, the 10 to 15 feet of distance he was able to maintain from defendant, and his eventual shooting. We cannot say for sure what would have happened if Officer Barnes had not reacted so quickly, but conclusively resolving that question is not required to uphold an attempt conviction. Wielding a dangerous weapon while chasing Officer Barnes is enough evidence defendant was taking a direct but ineffectual step towards killing him. (Cf. *People v. Nelson* (2011) 51 Cal.4th 198, 212 ["Simply pointing his gun at [the victim] under these circumstances is sufficient to support a finding of attempted murder"]; *People v. Dillon, supra*, 34 Cal.3d at p. 455 ["the law of attempts would be largely without function if it could not be invoked until the trigger was pulled, the blow struck, or the money seized"].)

7

Our review is limited. The court's assessment of the credibility of the witnesses is determinative, and we must affirm its judgment if there is credible evidence of solid value. That is the case here. The trial court watched the video, listened to the percipient witnesses, and did not believe defendant. There is substantial circumstantial evidence to support the trial court's conclusion that when defendant chased Officer Barnes with a hatchet raised while yelling and speeding up, he specifically intended to kill him. We therefore will affirm the trial court's judgment.

II

*Fines and Fees*

Defendant challenges the court's imposition of two $10,000 restitution fines (§§ 1202.4, subd. (b), 1202.45), three $30 criminal conviction assessments (Gov. Code, § 70373), and three $40 court operations assessments (§ 1465.8), citing *Dueñas, supra*, 30 Cal.App.5th 1157, requesting remand for an ability to pay determination. Defendant contends that he suffered from ineffective assistance of counsel if he forfeited this argument. Without reaching the merits, we agree with the People that defendant forfeited this challenge and defendant has not established a claim for ineffective assistance of counsel.

Defendant was sentenced on July 26, 2019, over six months after issuance of the *Dueñas* decision. (*Dueñas, supra*, 30 Cal.App.5th 1157 [decided Jan. 8, 2019].) Therefore, his failure to raise *Dueñas* at sentencing forfeits this argument by operation of normal rules of appellate review. (*People v. Scott* (1994) 9 Cal.4th 331, 351-354 [to preserve a sentencing issue for review, it must be raised in the trial court].)

Further, defendant was ordered to pay the maximum restitution fine of $10,000, which is above the statutory minimum of $300 (§ 1202.4, subd. (b)(1)). Thus, defendant's ability to pay was already at issue by virtue of section 1202.4, subdivisions (c) and (d), and defendant bore the burden of demonstrating an inability to pay (§ 1202.4, subd. (d)). His failure to object and demonstrate an inability to pay further operates to

8

forfeit this argument. (See, e.g., *People v. Nelson, supra*, 51 Cal.4th at p. 227 [defendant's claim that the court erroneously failed to consider ability to pay a $10,000 restitution fine is forfeited by the failure to object]; *People v. Gamache* (2010) 48 Cal.4th 347, 409 [challenge to $10,000 restitution fine forfeited by failure to object to alleged inadequate consideration of defendant's ability to pay]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [rejecting the argument that defendant was exempted from forfeiture because his restitution fine amounted to an unauthorized sentence based upon his inability to pay]; see also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [defendant's failure to challenge a restitution fine was a classic example of circumstance appropriate for forfeiture rule].)

That defendant's ability to pay claims are constitutional in character does not alter the application of the forfeiture doctrine. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859 [constitutional exception to the forfeiture rule related to prophylactic advisements concerning significant rights did not apply to a claim concerning failure to obtain express waiver of an ability to pay hearing]; *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 [noting longstanding rule that a constitutional right may be forfeited in criminal proceedings by " ' "failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "].)

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) On direct appeal, a judgment will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.

9

All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

Defendant points to nothing in the record relating to why defense counsel failed to object to the imposition of the fines, fees, and assessment, and the record does not affirmatively disclose that counsel had no tactical purpose for doing so. Perhaps counsel had a reason to conclude defendant could pay the fines and fees. This would be supported by the evidence defendant had a good paying job and recently bought cell phones and a laptop. Defendant's prejudice analysis, moreover, does not show a reasonable probability that the outcome would have been different had his counsel objected. Defendant argues that at sentencing he "had been unemployed and in custody for approximately six years by the time he was sentenced." But he does not claim he did not have sufficient resources before being arrested, which, again, would be contradicted by the evidence at trial. This does not meet defendant's burden of showing resulting prejudice.

### III

### *Abstract of Judgment*

Finally, defendant asks us to correct the abstract of judgment, alleging it erroneously states the sentence imposed. The People agree.

At sentencing, the court imposed an indeterminate term of 30 years to life based on 15 years to life for the attempted murder, doubled for the prior strike, and a determinate term of six years based on one year for the deadly weapon enhancement and five years for the prior serious felony. However, the indeterminate portion of the abstract of judgment lists a 15-year term for a section 667, subdivision (e)(1) enhancement in addition to the 30-year-to-life term for the attempted murder conviction. Also, all of the terms, including the attempted murder charge, are listed on the determinate portion of the abstract, the weapons enhancement is listed as six years, the serious felony enhancement is not listed at all, and an enhancement for "667(b)" is listed as 15 years. These errors

10

should be corrected.  (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [oral pronouncement controls].)

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment which reflects the court's oral pronouncement of judgment by amending the indeterminate portion of the abstract of judgment to list only a 30-year-to-life term for the attempted murder conviction, and eliminate the section 667, subdivision (e)(1) enhancement, and amending the determinate abstract of judgment by removing the attempted murder conviction, reducing the deadly weapon enhancement to one year, adding the prior serious felony enhancement for five years, and eliminating the section 667, subdivision (b) enhancement.  In all other respects the judgment is affirmed.

                                                               _____KRAUSE_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____MAURO_____, J.

11